UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

AYSHEA L. DUNN,

                                        Plaintiff,

               -v-

JOHN SEDERAKIS and SABRINA BROWN,

                                  Defendants.

------------------------------------------------------------------X

11 Civ. 8210 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/15

PAUL A. ENGELMAYER, District Judge:

       This case is before the Court on remand.  This Court had dismissed plaintiff Ayshea

Dunn's retaliation claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3),

because, under Second Circuit precedent at the time, an oral complaint to a supervisor did not

qualify as protected activity under the FLSA.  Earlier this year, however, the Second Circuit

reversed the earlier precedent in *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015), and

remanded this case for proceedings consistent with *Greathouse*.  *See Dunn v. Sederakis*, 602 F.

App'x 33, 34–35 (2d Cir. 2015).

       Defendants John Sederakis and Sabrina Brown (collectively, "defendants") again move

to dismiss.  For the reasons that follow, the Court grants that motion.

I.      **Background**

A.  **Factual Allegations**[1]

Between 1993 and April 21, 2009, Dunn was an employee of the City College of New York ("CCNY"), part of the City University of New York ("CUNY").  TAC ¶ 7.  Dunn earned about $44,000 per year as an administrative assistant.  *Id.* ¶ 8.  In 2007 and 2008, the time period at issue, Dunn's immediate supervisor was Dr. Jane Gallagher, Sederakis was CCNY's associate director of human resources, and Brown was director of human resources.[2]  *Id.* ¶¶ 4–5, 7.

Dunn alleges that, between April and September 2008, she "routinely worked overtime hours," for which she was never compensated.  *Id.* ¶ 9.  She also claims that, in late September and October 2008, she was docked a total of nine days' wages.  *Id.* ¶ 10.  Dunn alleges that, after she complained to CCNY personnel about the unpaid overtime and docked wages, defendants retaliated against her by taking adverse employment actions.  *See id.* ¶¶ 9, 10, 22.

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the plaintiff's Third Amended Complaint ("TAC"), Dkt. 53, to be true.  The Court also relies on certain materials contained in the Declaration of Michael R. Klekman in Support of Defendants' Motion to Dismiss Third Amended Complaint ("Klekman Decl."), Dkt. 56.  It is proper to consider such materials, including Dunn's complaint to the State Division of Human Rights ("SDHR") and the letters from her employer concerning her disciplinary proceeding, to the extent they are incorporated by reference in, and are integral to, Dunn's complaint.  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) (alterations in original) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  *See also Dunn*, 602 F. App'x at 34 n.1 (holding that the Court may consider the content of the SDHR complaint on remand).

[2] The Court notes that, in several places, Sederakis's name is spelled "Siderakis" and that Brown is also referred to as "Sabrina Brown Ellis."  *See* TAC ¶¶ 4–5.  The Court refers to defendants as Sederakis and Brown for consistency's sake.

1.      **Dunn's Complaints**

As reviewed more fully below, between July 2008 and November 2008, Dunn made complaints on multiple occasions to different individuals. *Id.* ¶ 14.

During this same period, CCNY was resolving disciplinary charges against Dunn. Specifically, on July 8, 2008, Sederakis notified Dunn by letter that disciplinary charges had been brought against her, alleging four days of absence without leave in June, 10 days of lateness in June, and failure to report six days of absence on her timesheets in April and May. *See* Klekman Decl., Ex. E. On September 12, 2008, CCNY issued its "Step One Decision," signed by Brown, finding Dunn guilty of misconduct and docking her nine days' pay. *Id.*, Ex. G.[3] The Step One Decision preceded most of Dunn's complaints and the allegedly connected adverse employment actions, and the July 8 letter from Sederakis appears to have preceded all of them.

The following is a timeline of Dunn's complaints as alleged in the TAC, presented in as chronological an order as can be reconstructed:

1.  On July 14, 2008, Dunn filed a written complaint with the State Division of Human Rights ("SDHR") alleging that she had been subjected to unlawful discrimination because of her disability conditions, namely, sarcoidosis and hydrocephalus. Klekman Decl., Ex. F, ¶ 1. Dunn alleges that she also complained orally to the SDHR about the docking of her wages and the failure to pay overtime, but these complaints were not memorialized. TAC ¶ 21.

---

[3] Dunn's allegations are consistent with this summary of events, and the CCNY documents from which this summary is drawn are integral to Dunn's claims and incorporated by reference in the TAC. To wit, the TAC alleges that in September and October 2008, nine days of wages were docked from Dunn's pay, TAC ¶ 10, and refers to "the decision by Brown and Siderakis to dock her wages." *Id.* ¶ 21. The TAC relies on these disciplinary actions as one basis for Dunn's complaints to CCNY employees. *See id.* ¶¶ 18, 19, 20.

2.  On August 18, 2008, Dunn complained in a letter to Sederakis that she had been
    "targeted" since returning from sick leave by Human Resources and by Gallagher.
    *See* Klekman Decl., Ex. H.  She complained that she had been incorrectly
    penalized for taking unearned sick time and requested a recalculation of her "time
    and leave balance."  *Id.*

3.  On September 22, 2008, Dunn copied Brown and Sederakis, among others, on a
    letter to her union representative complaining that she "had been found guilty" of
    misconduct at work, expressing displeasure with her union representation in the
    disciplinary proceedings, and requesting to move "to the next step or phase."[4]  *Id.*,
    Ex. I.

4.  On unspecified dates in August and September 2008, Dunn complained orally to
    Dean Paul F. Occhiogrosso, CCNY's legal counsel, about "earned, unpaid
    compensation for overtime work hours, among other matters."  TAC ¶ 17.

5.  On an unspecified date in September 2008, Dunn complained orally to CCNY's
    Affirmative Action Director, Robert Rodriguez, about the unpaid overtime, the
    wages docked from her September paycheck, and an "unpaid retroactive pay
    increase."  *Id.* ¶ 18.

---

[4] Although the TAC alleges that the August 18 and September 22 letters "notified Defendants of
her wage and overtime compensation complaints against them," TAC ¶ 15, in fact, as the text of
these letters reveals, they did not do so.  The letters are cognizable because they are integral to
Dunn's core allegation that she complained to defendants about wage and overtime issues, and as
such, they may "be considered . . . for 'what' they contain, 'not to prove the truth' of their
contents."  *Roth v. Jennings*, 489 F.3d 499, 511 (2d. Cir. 2007) (quoting *Kramer v. Time Warner
Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).  Where cognizable documents conflict with a
complaint's characterization of them, the documents control.  *See Rapoport v. Asia Electronics
Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

6.  On or about September 25, 2008, Dunn complained orally to Gallagher about the unpaid overtime, the docked wages, the unpaid retroactive pay increase, and the fact that defendants were ignoring her letters. *Id.* ¶ 19.

7.  On or about November 26, 2008, Dunn complained orally to Sederakis about the unpaid overtime, other "unpaid wages" (presumably the aforementioned docked wages), and the unpaid retroactive pay increase. *Id.* ¶ 20.

### 2.      Alleged Adverse Employment Actions

Dunn alleges that, in retaliation for these complaints, defendants subjected her to the following adverse employment actions, mostly in late 2008.

1.  On September 12, 2008, the disciplinary charges initiated against Dunn in July 2008 were found to be substantiated and she was docked wages for four days as a penalty and five days for absences not previously recorded.  Klekman Decl., Ex. G; *see also* TAC ¶ 13.

2.  Between November 2008 and early July 2009, Sederakis, with Brown's approval, withheld leave credits that Dunn had earned.  TAC ¶ 23.

3.  Starting in November 2008, defendants refused to provide Dunn a retroactive pay increase "to which she was entitled pursuant to contract between CCNY and her union." *Id.* ¶ 24.

4.  On November 26, 2008, Sederakis "had security abruptly escort Dunn out of the office." *Id.* ¶ 25.

5.  In December 2008, Sederakis took steps to "have Dunn deemed persona *non grata* at the campus." *Id.* ¶ 26.

6. In December 2008, defendants warned Dunn's union representatives not to intervene on her behalf. *Id.* ¶ 27.

7. On or about December 23, 2008, at a meeting between Dunn, defendants, and Dunn's union representatives, "the attendees sought to improperly pressure [Dunn] into dropping her wage and overtime compensation claims." *Id.* ¶ 28.

8. At an unspecified time, Dunn sought for CCNY's "retaliation committee" to investigate her complaints and the defendants "influenced" members of the committee to ignore Dunn's request. *Id.* ¶ 29.

9. Finally, Dunn alleges that three years later, after she commenced this action in late 2011, and after she "renewed her complaints about unpaid wages and compensation for overtime work hours" to Rodriguez in several voicemail messages, defendants pressured her union representatives "to refrain from lending assistance to her in her effort." *Id.* ¶ 30.

Dunn alleges that these adverse employment actions were unjustified and that "one or more" of them "violated CCNY and CUNY policies and procedures." *Id.* ¶ 33. Dunn alleges that these actions were taken in retaliation for the complaints described above, in willful violation of the FLSA. *Id.* ¶¶ 36–37.

### B.  Procedural History

On November 14, 2011, Dunn filed her initial Complaint, naming CUNY as defendant and bringing claims under, *inter alia*, the Family and Medical Leave Act, 29 U.S.C. 2615(a)(1). Dkt. 1.  On December 5, 2011, Dunn filed a First Amended Complaint, adding Sederakis and Brown as defendants, and bringing, *inter alia*, a FLSA retaliation claim focused primarily on the

decision to dock her wages and her complaints relating to that decision.  Dkt. 5, ¶¶ 72–93.  On

February 15, 2012, defendants moved to dismiss the First Amended Complaint.  Dkt. 15.

On March 7, 2012, Dunn filed a Second Amended Complaint ("SAC"), Dkt. 21, with the

Court's permission, Dkt. 20.  As the basis for the FLSA retaliation claim, the SAC pled that

defendants had retaliated against Dunn because of her July complaint to the SDHR, her August

18 and September 22 letters complaining about the docking of her wages, and unspecified

written and oral complaints in July and August 2008.  SAC ¶¶ 21, 26.  On April 27, 2012,

defendants moved to dismiss the SAC.  Dkt. 25.

On November 14, 2012, the Court dismissed the SAC in its entirety.  With respect to the

FLSA retaliation claim, the Court assumed *arguendo* that the SDHR complaint was a protected

activity under the FLSA but held that Dunn had failed to adequately plead a causal connection

between that activity and the alleged retaliatory actions.  *See* Dkt. 33, *reported at Dunn v. City*

*Univ. of New York*, No. 11 Civ. 8210 (PAE), 2012 WL 5511607, at *4–5 (S.D.N.Y. Nov. 14,

2012).  As for Dunn's oral complaints, the Court held that, under *Lambert v. Genesee Hospital*,

10 F.3d 46 (2d Cir. 1993), these, categorically, could not constitute protected activity under the

FLSA.  *Dunn*, 2012 WL 5511607, at *4.

On December 14, 2012, Dunn filed a notice of appeal.  Dkt. 35.  On May 8, 2015, the

Second Circuit vacated the dismissal of Dunn's FLSA retaliation claim and remanded for

proceedings consistent with its recent decision in *Greathouse*, which, overturning *Lambert*, held

that an oral complaint to a supervisor can constitute protected activity under the FLSA.  *See*

*Dunn*, 602 F. App'x at 34.  This Court then granted Dunn leave to amend the SAC to add new

factual allegations but not new claims or parties.  Dkt. 52.  On June 24, 2015, Dunn filed the

Third Amended Complaint ("TAC"), the operative complaint here.  Dkt. 53.

7

On July 15, 2015, defendants moved to dismiss the TAC.  Dkt. 55.  Defendants filed a

brief in support, Dkt. 57 ("Def. Br."), along with the Klekman declaration and attached exhibits.

On August 5, 2015, Dunn filed a brief in opposition.  Dkt. 58 ("Pl. Br.").  On August 12, 2015,

defendants filed a reply.  Dkt. 60 ("Def. Rep. Br.").

## II.      Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombley*, 550 U.S.

544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief."  *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[] all factual claims in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon*

*Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th*

*Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).  However, "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*,

556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id*.  "[R]ather, the complaint's *factual* allegations must

be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim

plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*,

550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

8

### III.    Discussion

The FLSA makes it unlawful to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3).  FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  A *prima facie* case of retaliation is established by "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). Dunn alleges that Sederakis and Brown retaliated against her for engaging in protected activity under the FLSA in 2008 and in 2011.  The Court addresses the events of these two years separately, as they raise different issues.

### A.    Dunn Fails to Adequately Allege Any FLSA Protected Activity in 2008

In *Greathouse*, the Second Circuit revised its longstanding definition of FLSA-protected activity[5] in light of the Supreme Court's decision in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011).  *Greathouse* held that "an employee may premise a [FLSA] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'"  784 F.3d at 107 (quoting *Kasten*, 131 S. Ct. at 1335).

---

[5] In *Lambert*, the Second Circuit had held that filing formal complaints, instituting a proceeding, and testifying were the only activities that the FLSA protects from retaliation.  *See* 10 F.3d at 55.

As summarized above, Dunn alleges making written and oral complaints over a several-month period in 2008 that addressed multiple concerns.  In her brief opposing the motion to dismiss, Dunn disclaimed reliance on her written complaints—specifically her complaint to the SDHR and her August 18 and September 22 letters regarding various workplace issues, *see* Pl. Br. 1—presumably recognizing that these do not constitute protected activities under the FLSA. The Court briefly explains why this is so, before turning to Dunn's oral complaints.

### 1.      Dunn's Written Complaints

Dunn's complaint to the SDHR was not protected activity under the FLSA because it made a claim of disability-based discrimination, and did not allege a violation of the FLSA.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (general complaints about discrimination and harassment do not constitute FLSA protected activity).  To be sure, the TAC alleges that, in addition to making her written complaint, Dunn complained orally to the SDHR about unpaid overtime and the docking of her wages.  TAC ¶ 21.  But the TAC does not allege that these oral complaints to the SDHR were ever communicated by the SDHR to CCNY or its employees, and Dunn's employer therefore was not on notice of any oral complaint to the SDHR by Dunn recounting even a potential FLSA violation.

Dunn's August 18, 2008 letter also does not qualify as protected activity.  There, Dunn complained about the calculation of her sick leave.  *See* Klekman Decl., Ex. H.  Nowhere, however, did the letter mention overtime or wages.  This letter, therefore, could not have put CCNY on notice that Dunn was asserting rights under the FLSA.

Finally, Dunn's September 22, 2008 letter primarily expressed her dissatisfaction with the representation provided by her union during the disciplinary proceedings at CCNY.  *See id.*,

Ex. I.  Again, the letter does not mention overtime, wages, or, for that matter, the FLSA.  The

filing of this letter, too, therefore was not a protected activity.

2.       **Dunn's Oral Complaints**

Among other oral complaints, Dunn alleges that, in various conversations with CCNY

personnel, she complained about an unpaid retroactive pay increase.  *See* TAC ¶¶ 18–20.  Dunn

alleges that this pay increase was owed "pursuant to a contract between her union and CCNY."

*Id.* ¶ 20.  Any such complaint, however, put CCNY on notice only that Dunn believed she had

not been paid what her employer had promised.  Dunn did not thereby assert a violation of the

FLSA, or even suggest that she might be doing so.  That is because, under settled law, the FLSA

neither converts an employer's contract breach into a violation of federal law, nor generally

federalizes disputes between employers and employees.  *See McNamara v. Associated Press*, 40

F. Supp. 3d 345, 354 (S.D.N.Y. 2014); *Akinfaderin v. W.P. Carey & Co. LLC,* No. 11 Civ. 3184

(LBS), 2011 WL 6961403, at *5 (S.D.N.Y. Dec. 28, 2011); *see also Nakahata v. New York-*

*Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("The FLSA statute

requires payment of minimum wages and overtime wages only . . . .").  Dunn's complaints about

the unpaid retroactive pay increase were, therefore, not protected under the FLSA.[6]

Dunn's remaining oral complaints require a different analysis.  Dunn alleges that, on at

least five occasions between August and November 2008,[7] she complained orally to a CCNY

---

[6] Dunn's complaints about being ignored by defendants, *see* TAC ¶¶ 19, 29, similarly were not
protected under the FLSA, nor would being ignored constitute an adverse retaliatory action.  *See*
*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (employer's
failure to investigate complaints usually not materially adverse).

[7] Dunn alleges that she complained orally to Occhiogrosso "[i]n August and September 2008,"
which suggests at least two occasions.  TAC ¶ 17.

11

employee about unpaid overtime, docked wages, or both; these complaints were made at various points to Occhiogrosso, Rodriguez, Gallagher, and Sederakis. *See* TAC ¶ 17–20. The TAC's accounts of these complaints are cursory. The TAC's account of the complaint to Gallagher is representative. It alleges that Dunn "complained that Defendants refused to remit compensation due to her for overtime work hours, [and] that Defendants . . . docked wages that she earned earlier [in September]."[8] *Id.* ¶ 19.

To the extent these complaints concerned docked wages, they were not protected activity under the FLSA because they would not have put a reasonable employer on notice that Dunn was asserting *FLSA* rights. Indeed, the TAC alleges that the docking of Dunn's wages "violated CCNY's policy," as opposed to the FLSA. *Id.* ¶ 13. And the July 8 and September 12 letters from CCNY to Dunn confirm that the docking of wages resulted from an internal disciplinary proceeding resolved adversely to Dunn. *See* Klekman Decl., Ex. E, G. Thus, while Dunn vaguely complained to CCNY about "earned wages that were docked," TAC ¶ 18, this would not have altered the employer's reasonable assumption that Dunn's protests about her docked wages concerned this internal disciplinary matter, rather than the FLSA.

This leaves Dunn's oral complaints about unpaid overtime. A complaint about overtime has the potential to satisfy the *Greathouse* standard, because the FLSA does convey a right to overtime pay. *Greathouse* requires that an oral complaint be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of

---

[8] Dunn alleges complaining to Occhiogrosso "about the earned, unpaid compensation for overtime work hours, among other matters." *Id.* ¶ 17. She alleges complaining to Rodriguez "about the earned, unpaid compensation for overtime work hours . . . and the earned wages that were docked from her September 2008 paycheck." *Id.* ¶ 18. She alleges complaining to Sederakis "about the earned, unpaid wages and overtime compensation." *Id.* ¶ 20.

rights protected by the [FLSA] and a call for their protection." *Greathouse*, 784 F.3d at 107 (quoting *Kasten*, 131 S. Ct. at 1335) (internal quotation marks omitted).

A number of recent district court cases in this Circuit have applied this standard in the context of motions to dismiss. The complaints that have withstood dismissal have all been substantially clearer and more detailed than Dunn's oral complaints about overtime in alleging FLSA-violative conduct. For instance, in *Trowbridge v. Wernicki*, the plaintiff, in complaining about unpaid wages, explicitly invoked her employer's "compensation obligations under the FLSA." No. 13 Civ. 1797 (JAM), 2015 WL 3746346, at *5 (D. Conn. June 15, 2015) (internal quotation marks omitted). While an explicit invocation of the FLSA is not *necessary* to put an employer on notice, *see Greathouse*, 784 F.3d at 116, it significantly distinguishes the *Trowbridge* complaints from Dunn's. Likewise, in *Brown v. Hearst Corp.*, the plaintiff "repeatedly told [defendants] that their failure to pay her overtime compensation was illegal" and pled substantial facts suggestive of actual FLSA overtime violations, including the forging of timesheets. No. 14 Civ. 1220 (VLB), 2015 WL 5010551, at *1 (D. Conn. Aug. 24, 2015); *see also Corpes v. Walsh Constr. Co.*, No. 14 Civ. 181 (MPS), 2015 WL 5331803, at *3 (D. Conn. Sept. 14, 2015) (plaintiff who complained to employer that coworkers were "often not paid overtime" and "questioned the legality" of employer's practices would state a FLSA retaliation claim). The TAC, by contrast, does not allege that Dunn *ever* complained, let alone repeatedly, that defendants were engaged in a violation of law.[9]

---

[9] In *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, the district court granted the plaintiff's motion for default judgment where the complaint alleged that he had been subjected to adverse employment action after complaining that "his 'wages were frequently less than he was entitled to' and that 'he was not receiving overtime pay.'" No. 14 Civ. 1857 (RJD) (LB), 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015), *report and recommendation adopted*, 2015 WL 5444939 (E.D.N.Y. Sept. 15, 2015). Although the plaintiff did not allege that his complaints to his employer expressly invoked the FLSA or accused defendants of illegality, *see* Dkt. 1, No. 14

At the same time, courts dismissing complaints or granting summary judgment to defendants as to FLSA retaliation claims have appeared to require that the oral complaint have been "framed in terms of potential illegality" in order to constitute protected activity. *See, e.g., Lasater v. Tex. A & M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012); *Hernandez v. Praxair Distrib., Inc.*, No. 14 Civ. 1915, 2015 WL 789096, at *2 (S.D. Tex. Feb. 17, 2015); *see also Cotto v. John C. Bonewicz, P.C.*, No. 13 Civ. 842, 2015 WL 3609167, at *9 (N.D. Ill. June 9, 2015) (complaint to employer that "it was 'a little bit ridiculous' that she was asking him to work 12–16 hour days when he was paid 'only for eight hours'" was not sufficiently clear to constitute protected activity); *Manfield v. Alutiiq Int'l Solutions, Inc.*, 851 F. Supp. 2d 196, 206 (D. Me. 2012) (not a protected activity to inquire about timesheet discrepancies without "voic[ing] an opinion" about legality). This Court, however, is unprepared to hold that an explicit claim of illegality, as opposed to a clear articulation of facts indicative of illegality, is required for an oral complaint to support a claim of FLSA retaliation. Notably, in stating that the complaint must be "sufficiently clear and detailed" to put a reasonable employer on notice that legal rights are being invoked, the Supreme Court did not go further to obligate the employee to

---

Civ. 1857, his complaint pled sufficient facts to support liability for unpaid overtime under the FLSA. 2015 WL 5437492, at *3. Where the plaintiff is capable of alleging facts that support a substantive FLSA violation, a reasonable employer would more likely treat the plaintiff's vague complaints about overtime pay as concerning such a FLSA violation. Notably here, across four operative complaints, Dunn has never pled an FLSA overtime claim or alleged facts sufficient to support such a claim. *See, e.g., Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."); *Nakahata*, 723 F.3d at 201 (dismissing FLSA overtime claim where plaintiffs "merely alleged that they were not paid for overtime hours worked"); *Mohamed v. NYU*, No. 14 Civ. 8373 (GBD) (MHD), 2015 WL 3387218, at *26 n.24 (S.D.N.Y. May 21, 2015), *report and recommendation adopted*, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015) ("Merely using the word 'overtime' in a complaint otherwise devoid of related facts does not state an FLSA claim.").

14

invoke such rights *in haec verba.  Kasten*, 131 S. Ct. at 1335.  In light of *Kasten*, however, it is

clear, as the First Circuit put the point long ago, that mere "abstract grumblings" will not pass

muster.  *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 44 (1st Cir. 1999).

　　　Dunn's oral complaints here, viewed in context, do not meet the standards of *Greathouse*

and *Kasten.*  The TAC does not allege that Dunn ever invoked the FLSA or accused CCNY or it

employees of illegality.  Moreover, her oral complaints must be read in the context of her broad-

ranging complaints of violations of CCNY's internal standards—of "[o]ne or more acts and

omissions by Defendants [that] violated CCNY and CUNY policies and procedures."  TAC ¶ 33;

*see also id.* ¶¶ 11, 13.  In this context, Dunn's generalized oral references to "overtime"—for no

more specifics are pled—would reasonably suggest to the CCNY audience to whom she spoke

that she might be asserting a breach of internal policy or contractual duty.  At the very least,

there would be no basis for the listener to infer that Dunn's opaque and unexplicated reference to

"overtime" was meant to claim a violation of the FLSA.

　　　It is significant that Dunn was contemporaneously complaining about CCNY's docking

of her wages and its refusal to grant a retroactive pay increase, both of which appear to have

implicated internal issues of discipline and contract, rather than statutory violations.  *See id.* ¶ 13

(alleging that the docking of her wages "violated CCNY's policy"); *id.* ¶ 24 (alleging that she

was entitled to the pay increase "pursuant to a contract between CCNY and her union").

Similarly, Dunn's pattern of complaints also implicated CCNY's handling of her sick leave, the

quality of her union representation, and the fact that CCNY was allegedly ignoring her

complaints, all of which implicated internal policy and/or contractual rights, not the FLSA.  *See*

Klekman Decl., Ex. H; *id.*, Ex. I; TAC ¶ 19.

Viewing Dunn's stated grievances in context, Dunn presented CCNY employees with a litany of complaints that plainly concerned non-FLSA matters,[10] accompanied by an unelaborated reference to "earned, unpaid compensation for overtime work hours" or words to similar effect.[11]  TAC ¶¶ 17, 18.  Particularly given the non-statutory gist of Dunn's other grievances, Dunn's references to overtime could easily have referred not to the FLSA, but to Dunn's understanding of CCNY's duties under its policies and procedures or to CCNY's duties under Dunn's employment contract as she understood it.  Because the TAC pleads vanishingly little detail about Dunn's oral complaints to the CCNY personnel, a finder of fact could not find, on the facts pled, that her words were "sufficiently clear and detailed . . . in light of both content *and context*" to convey that Dunn was asserting her legal rights under the FLSA.  *Greathouse*, 784 F.3d at 107 (emphasis added).   The pleadings imply instead that Dunn's oral references to overtime were part and parcel of Dunn's overall indictment of CCNY at the time for various internal, contractual, and disciplinary lapses.  The TAC thus does not plead facts sufficient to alert her employers to a claim of an FLSA violation, as necessary to meet the *Greathouse/Kasten* standard.

In light of the TAC's failure to plead a protected oral complaint in 2008, there is no occasion to consider the second and third elements of a *prima facie* FLSA retaliation claim as to these complaints.

---

[10] As to the conversation with Occhiogrosso, the TAC alleges only that Dunn complained about overtime "among other matters."  *Id.* ¶ 17.  As to the conversation with Gallagher, the TAC alleges that Dunn also complained that defendants ignored her letters—a gripe about internal decorum that does not implicate the FLSA.  *Id.* ¶ 19.

[11] To be sure, the TAC does allege that defendants "had the power to remit or to deny FLSA non-exempt employee compensation for overtime work hours."  *Id.* ¶ 11.  But the TAC does not allege that Dunn articulated any such formulation in her oral complaints.  And the decisive issue here is whether the CCNY defendants were put on notice of the nature of Dunn's complaints, not whether, if given proper notice, they had the capacity to act to obtain redress.

### B. Dunn Fails to Allege a Materially Adverse Action Resulting from the Filing of this Lawsuit

Dunn commenced this action in November 2011. *See* Dkt. 1. The TAC alleges generally that, in retaliation, defendants "pressured Dunn's union representatives to refrain from lending assistance to her." TAC ¶ 30. The Court assumes *arguendo* that the filing of this lawsuit constituted a protected activity under the FLSA (although it notes that the initial complaint did not bring FLSA claims) and considers whether pressuring Dunn's union representatives not to assist her could constitute a materially adverse retaliatory action.

A retaliatory action is materially adverse "if it well might have dissuaded a reasonable worker" from bringing complaints similar to those lodged by the plaintiff. *Mullins*, 626 F.3d at 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). Notwithstanding the Second Circuit's reference to "adverse *employment* action," *Mullins*, 626 F.3d at 53 (emphasis added), district courts in this Circuit have held "that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct." *Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015). However, these circumstances are "relatively narrow." *Id.* Judge Caproni recently found not a single "post-employment retaliation case from this Circuit or elsewhere that did not involve either employment-related harm or a threatened legal claim against the plaintiff." *Id.* at *4.

Thus, while bringing "baseless claims or lawsuits designed to deter claimants from seeking legal redress" can constitute materially adverse retaliatory action, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008), merely pressuring a claimant's union representatives not to assist her lawsuit would not dissuade a reasonable worker from bringing similar complaints. Such pressure, particularly when alleged in the conclusory and

17

general manner of the TAC, does not subject the worker to legal risk, or even necessarily affect the likely outcome of her suit against the former employer.  That Dunn herself was not discouraged from continuing to pursue this lawsuit—as she has for several years—is relevant, though not dispositive.  *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011).

Finally, while alleged acts of retaliation must generally be considered "in the aggregate," *see Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010), here the other alleged retaliatory acts occurred three years before the filing of this lawsuit.  The isolated act of pressuring Dunn's union representatives is not comfortably portrayed as part of a larger "campaign of harassment which though trivial in detail may have been substantial in gross."  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)) (internal quotation marks omitted).

Therefore, the Court holds that Dunn has failed to adequately plead a *prima facie* retaliation claim with respect to the events of late 2011.

### C.    The TAC is Dismissed with Prejudice

The Court dismisses the TAC, Dunn's fourth complaint in this case, with prejudice.  In preparing this most recent complaint, Dunn had the benefit of the Second Circuit's guidance in *Greathouse* as to the requirements for an adequate pleading, yet she continued to plead the facts of her alleged oral complaints to CCNY in conclusory, unadorned, and inadequate terms.  At this point, seven years after the alleged oral complaints, an opportunity to replead would merely incent Dunn to "remember" statements that may not have actually been made.  The Court notes in this regard that Dunn inaccurately characterized her August 18 and September 22 letters in

18

order to bring them into conformity with her alleged oral complaints regarding docked wages

and unpaid overtime. *See supra* n.4.

## CONCLUSION

For the reasons stated, Dunn's Third Amended Complaint is dismissed with prejudice.

The Clerk of Court is directed to terminate the motion pending at docket number 55, and to close

this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 2, 2015
New York, New York